<pre>
 1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEBRASKA
 2

 3   UNITED STATES OF AMERICA,     ·   Docket No. 4:17CR3102
                                   ·
 4           Plaintiff,            ·
                                   ·
 5      vs.                        ·   Lincoln, Nebraska
                                   ·   July 24, 2018
 6   MIGUEL ANGEL LOPEZ-AGUIRRE,   ·   10:33 a.m.
                                   ·
 7           Defendant.            ·
     · · · · · · · · · · · · · · · ·
 8

 9

10        TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS
           BEFORE THE HONORABLE CHERYL R. ZWART
11              UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16   APPEARANCES:

17   For the Plaintiff:        MR. MATTHEW R. MOLSEN, ESQ.
                               Assist. United States Attorney
18                             487 Federal Building
                               100 Centennial Mall South
19                             Lincoln, NE  68508-3865

20   For the Defendant:        MS. NANCY K. PETERSON, ESQ.
                               Peterson Law Office
21                             200 Windsor Place
                               330 South Tenth Street
22                             Lincoln, NE  68508

23

24   Proceedings recorded by electronic sound recording, transcript
     produced by transcription via mechanical stenography.
25
</pre>

I N D E X

                          Direct  Cross  Redirect  Recross

WITNESSES FOR THE GOVERNMENT:

None

WITNESSES FOR THE DEFENSE:

None

EXHIBITS:                                  Marked  Received

None


                                                     PAGE

FINDINGS OF THE COURT................................   17

CERTIFICATE OF REPORTER.............................   18

1       (At 10:33 a.m. on July 24, 2018, with counsel for the

2    plaintiff present, counsel for the defendant present, and the

3    defendant present, the following proceedings were had:)

4       THE COURT:  We're on the record in Case

5    Number 4:17CR3102, <u>United States of America vs. Miguel</u>

6    <u>Lopez-Aguirre</u>.

7       Counsel, please enter your appearance.

8       MR. MOLSEN:  Your Honor, please show the appearance

9    of Matt Molsen for the government.

10      MS. PETERSON:  Nancy Peterson on behalf of the

11   defendant, Your Honor.

12      THE COURT:  Mr. Lopez-Aguirre, I have been told

13   that you want to enter a plea of guilty.  Is that true?

14      THE DEFENDANT:  Yes, Your Honor.

15      THE COURT:  I need to explain to you, sir, that I

16   am not your sentencing judge, and I am not the judge who will

17   determine whether this guilty plea is accepted.  That matter

18   will be taken up by Judge Kopf, who is your sentencing judge.

19   But what I can do for you today is gather some information

20   from you and make a recommendation to Judge Kopf on that

21   issue.  Do you agree to proceed before me?

22      THE DEFENDANT:  Yes, Your Honor.

23      THE COURT:  Please raise your right hand.

24     (Defendant sworn.)

25      THE DEFENDANT:  Yes, I do, Your Honor.

1     THE COURT:  You're now under oath.  You have sworn

2  to tell the truth, which means if you lie during this

3  proceeding you can be separately prosecuted for the crime of

4  perjury.  Do you understand that?

5     THE DEFENDANT:  Yes.

6     THE COURT:  At this time I am going to have

7  Mr. Molsen, on behalf of the government, explain the charges

8  to which you intend to plead guilty and the possible penalty

9  for those charges.  Please listen.

10     MR. MOLSEN:  Yes, Your Honor.

11     Sir, the indictment alleges in Count I that on or

12  about April 20th of 2017 in the District of Nebraska that you

13  did knowingly and intentionally distribute five grams or more

14  of actual methamphetamine, a Schedule II controlled

15  substance.

16     Count II alleges that on or about May 1st of 2017

17  that you did knowingly and intentionally distribute

18  five grams or more of actual methamphetamine, a Schedule II

19  controlled substance.

20     And Count III alleges that on or about May 4th of

21  2017 in the District of Nebraska that you did knowingly and

22  intentionally distribute five grams or more of actual

23  methamphetamine, a Schedule II controlled substance.

24     Each of those charges are punishable by at least

25  five years' imprisonment and possibly up to 40 years'

1    imprisonment, a fine of up to $5 million, or any combination

2    of such fine and imprisonment, not less than four years of

3    supervised release, and a $100 special assessment.

4              THE COURT:  Do you understand the charges?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Do you understand the possible

7    penalties?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Having heard them again, is it still

10   your intent to plead guilty?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  I have in front of me a petition to

13   enter a plea of guilty.  Do you have that in front of you?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  It appears that you signed this today.

16   Is that correct?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Did you talk about pleading guilty

19   before today?

20             THE DEFENDANT:  Yes, I did.

21             THE COURT:  During those prior discussions with

22   your attorney were you under the influence of drugs or

23   alcohol or anything that would impair your thinking?

24             THE DEFENDANT:  No, Your Honor.

25             THE COURT:  Are you under the influence of anything

1  today?

2          THE DEFENDANT:  No, Your Honor.

3          THE COURT:  Are you having any difficulty thinking

4  today?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  The petition itself has typed-in

7  answers.  Did you go over the questions in the petition with

8  your attorney?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Did you answer the questions out loud?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Did she place your answers in the

13 petition itself?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Did she do so correctly?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And after going through the document

18 did you sign it?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Has anybody threatened you in any way

21 to get you to plead guilty?

22         THE DEFENDANT:  No.

23         THE COURT:  Has anybody promised you anything to

24 get you to plead guilty?

25         THE DEFENDANT:  No.

1          THE COURT:  Do you understand, sir, that if the

2     court accepts your plea of guilty you will be found guilty of

3     a felony?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand you have the right to

6     plead not guilty and make the government try to prove this

7     case at trial?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand you're giving up your

10    trial rights by pleading guilty?

11         THE DEFENDANT:  Yes.

12         THE COURT:  You have been represented in this case

13    by Ms. Peterson; is that correct?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Do you believe that she has

16    investigated this case sufficiently so that you know what to

17    do today?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Are you satisfied with her

20    representation?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you understand that if you chose to

23    go to trial you would have the right to counsel

24    representation at the trial at no cost to you?

25         THE DEFENDANT:  Yes.

1    THE COURT:  As that applies to you, Ms. Peterson

2    would be with you at the trial, she would represent your

3    interests, and she would never send you a bill for that

4    service.  Do you understand that?

5    THE DEFENDANT:  Yes.

6    THE COURT:  Do you understand that if you chose to

7    go to trial you would have a jury trial?

8    THE DEFENDANT:  Yes.

9    THE COURT:  Do you understand that at that trial

10   you would have the right to see and hear the witnesses who

11   testify against you and to have them cross-examined on your

12   behalf?

13   THE DEFENDANT:  Yes.

14   THE COURT:  Do you understand you would have the

15   right to call witnesses for you, and if they would not come

16   voluntarily you could get a court order called a subpoena to

17   make them come and testify?

18   THE DEFENDANT:  Yes.

19   THE COURT:  Do you understand that if you chose to

20   go to trial you could testify yourself if you wanted to or

21   you could exercise your right to remain silent?

22   THE DEFENDANT:  Yes.

23   THE COURT:  Do you understand that if you remained

24   silent at the trial the jury would not be allowed to consider

25   that silence in deciding whether you are guilty?

1    THE DEFENDANT:  Yes.

2    THE COURT:  And finally, sir, do you understand

3  that if you chose to go to trial the government would not get

4  a conviction against you unless it was able to prove to every

5  single juror that you are guilty beyond a reasonable doubt?

6    THE DEFENDANT:  Yes.

7    THE COURT:  Are you willing to give up all of those

8  trial rights and plead guilty in this case instead?

9    THE DEFENDANT:  Yes.

10    THE COURT:  With a guilty plea you will have a

11  felony record.  With that felony record comes the loss of

12  civil rights.  Those rights include the right to vote, the

13  right to serve in a jury, the right to hold a public office,

14  the right to carry a weapon.  You can also lose federal

15  benefits, but you will lose rights.  Do you understand that?

16    THE DEFENDANT:  Yes.

17    THE COURT:  And knowing that you will lose civil

18  rights, are you willing to plead guilty?

19    THE DEFENDANT:  Yes.

20    THE COURT:  You're looking at a sentence on

21  Count I -- actually, you're looking at a sentence on each of

22  the three counts of a minimum of five years and up to 40

23  years in prison, a possible fine of up to $5 million could be

24  imposed in addition to any term of imprisonment, supervised

25  release of at least four years, and a $100 mandatory special

1   assessment per count for a total of $300.

2          Do you understand that that's what you're facing?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Has Ms. Peterson explained the

5   sentencing guidelines to you?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Has she explained that those guidelines

8   provide the starting point that Judge Kopf will look at in

9   determining what your sentence ought to be?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that Judge Kopf will

12   consider all of your relevant conduct in determining your

13   sentence?

14          THE DEFENDANT:  Yes.

15          THE COURT:  For example, he's going to consider

16   such things as any criminal history you may have, how much

17   drugs, total drugs were involved in this case, whether you

18   played any leadership or managerial role in drug

19   distribution, whether there were guns involved with the

20   drugs, those types of things.  Do you understand that?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  And once Judge Kopf looks at all of

23   that conduct and makes his findings, do you understand that

24   he can sentence you within the guidelines that you have

25   discussed with Ms. Peterson, but he doesn't have to?  He can

1   go above or below those guidelines based upon his findings.

2   Do you understand?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  Then once Judge Kopf determines how

5   much time you will spend in prison, do you understand you

6   will be required to serve all of that time, and the most you

7   can get off of that sentence is 54 days per year for good

8   time served, and then that's only if you can earn that good

9   time?  Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  After you get out of prison your

12  sentence will not yet be over.  You will be required to

13  follow rules that are listed in your sentencing order for a

14  minimum of five -- four years.  Those rules are called

15  conditions of release.  Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  If you were to violate those rules

18  during that four-year period of time you can be brought back

19  to court and sent back to jail.  Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And do you understand that if you

22  violate those rules by committing another crime, your penalty

23  or sentence on that separate crime could be greater than it

24  otherwise would have been merely because you were still

25  serving the sentence in this case when you committed the next

1   crime?  Do you understand?

2              THE DEFENDANT:  Yes.

3              THE COURT:  You will be required to pay the $100

4   special assessment per count, for $300.  Do you understand?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Is there any restitution?

7              MR. MOLSEN:  No, Your Honor.

8              THE COURT:  All right.  You do not have a plea

9   agreement with the government; is that correct?

10              THE DEFENDANT:  Yes.

11              THE COURT:  Were any written plea agreements

12   extended?

13              MR. MOLSEN:  Yes, Your Honor.

14              THE COURT:  All right.  Let me ask you, sir, did

15   your attorney talk to you about the written plea agreement

16   that the government extended to you?

17              THE DEFENDANT:  Yes.

18              THE COURT:  All right.  After having those

19   discussions, did you decide to reject that plea agreement?

20              THE DEFENDANT:  Yes.

21              THE COURT:  All right.  Do you believe that you and

22   your attorney had adequate time to consider that plea

23   agreement and make that decision?

24              THE DEFENDANT:  Yes.

25              THE COURT:  And do you understand that the -- your

1    attorney cannot guarantee one way or another whether it was a

2    good idea or not to accept or reject that plea agreement?

3            THE DEFENDANT:  Yes.

4            THE COURT:  All right.  Then at this time I am

5    going to have Mr. Molsen explain the factual basis.  What

6    that means is the key facts the government would present at

7    trial if the case went to trial.  I want you to listen as he

8    does that because I am going to ask you questions about what

9    he says.

10           Mr. Molsen?

11           MR. MOLSEN:  Yes, Your Honor.  Your Honor, on

12   April 20th of 2017 a cooperating informant, or a CI, at the

13   direction of law enforcement met with the defendant and

14   purchased methamphetamine from him.  That methamphetamine was

15   later sent to the Nebraska State Patrol Crime Laboratory.

16   Testing there revealed that it contained at least 11 grams of

17   actual or pure methamphetamine.

18           On May 1st of 2017 at the direction of law

19   enforcement a CI again met with the defendant and bought

20   additional methamphetamine.  That methamphetamine was later

21   sent to the laboratory and found to contain 9.6 grams of

22   actual methamphetamine.

23           And then, finally, on May 4th of 2017 a CI met with

24   the defendant, who purchased methamphetamine from him.  That

25   methamphetamine was later sent to the laboratory and found to

1    contain 5.6 grams of actual methamphetamine, all of those

2    events occurring here in the District of Nebraska.

3              THE COURT:  Ms. Peterson, do you agree that if this

4    case went to trial that evidence would go before a jury?

5              MS. PETERSON:  I do.

6              THE COURT:  All right.  Mr. Lopez-Aguirre, did you

7    listen as Mr. Molsen described the evidence against you?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Is what he said the truth?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Were you in Nebraska on April 20th of

12   2017?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Were you also in Nebraska on May 1st of

15   2017?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And were you also in Nebraska on

18   May 4th of 2017?

19             THE DEFENDANT:  Yes.

20             THE COURT:  On each of those days were you in

21   possession of methamphetamine?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Did you know that the drug you had in

24   your possession was in -- methamphetamine?

25             THE DEFENDANT:  Yes.

1    THE COURT:  Did you sell the methamphetamine to

2  someone?

3    THE DEFENDANT:  Yes.

4    THE COURT:  On each of those dates?

5    THE DEFENDANT:  Yes.

6    THE COURT:  And did you do those sales here in

7  Nebraska?

8    THE DEFENDANT:  Yes.

9    THE COURT:  Any additional questions?

10    MR. MOLSEN:  No, Your Honor.

11    THE COURT:  Ms. Peterson?

12    MS. PETERSON:  No, ma'am.

13    THE COURT:  Mr. Molsen, do you believe the guilty

14  plea is knowing, intelligent, and voluntary and that there is

15  a factual basis for it?

16    MR. MOLSEN:  Yes, Your Honor.

17    THE COURT:  Do you agree, Ms. Peterson?

18    MS. PETERSON:  I do.

19    THE COURT:  All right.  Mr. Lopez-Aguirre, do you

20  want this court to accept your plea of guilty?

21    THE DEFENDANT:  Yes.

22    THE COURT:  Do you have any questions of me before

23  I proceed?

24    THE DEFENDANT:  No.

25    THE COURT:  To Count I of the indictment, which

1    alleges that on or about April 20th of 2017 you did knowingly

2    and intentionally distribute five grams or more of actual

3    methamphetamine, what do you plead?

4              THE DEFENDANT:  Guilty.

5              THE COURT:  Actually, there's one question I did

6    not ask.  On each of the three days that you distributed

7    methamphetamine do you agree that the amount of

8    methamphetamine you had in your possession was five grams or

9    more?

10             THE DEFENDANT:  Yes.

11             THE COURT:  All right.  Now I'll go back and start

12   this again.  On Count -- to Count I of the indictment, which

13   alleges that on or about April 20th of 2017 in the District

14   of Nebraska you did knowingly and intentionally distribute

15   five grams or more of actual methamphetamine, what do you

16   plead?

17             THE DEFENDANT:  Guilty.

18             THE COURT:  To Count II of the indictment, which

19   alleges that on or about May 1st of 2017 when you -- while in

20   the District of Nebraska you did knowingly and intentionally

21   distribute five grams or more of actual methamphetamine, what

22   do you plead?

23             THE DEFENDANT:  Guilty.

24             THE COURT:  And to Count III of the indictment,

25   which alleges that on or about May 4th of 2017 you did

1    knowingly and intentionally distribute five grams or more of

2    actual methamphetamine, what do you plead?

3            THE DEFENDANT:  Guilty.

4            THE COURT:  I do find that your guilty pleas are

5    knowing, intelligent, and voluntary and that there is a

6    factual basis for it.  I will recommend to Judge Kopf that he

7    accept your plea of guilty.

8            Sentencing date we're looking at is October 16th at

9    one o'clock if that works for everyone.

10           MR. MOLSEN:  Yes, Your Honor.

11           MS. PETERSON:  It works for us, Your Honor.

12           THE COURT:  All right.  Now, Mr. Lopez-Aguirre, let

13   me see, I believe I read this this morning.  It appears that

14   you have remained in compliance with all of the requirements

15   of pretrial services, including the drug treatment services

16   that they have had you going through and all of the

17   programming for drug treatment.

18           You need to applaud yourself for that.  I don't get

19   to applaud everybody for that effort when they come in here.

20   I also would be doing you a disservice if I didn't give you a

21   warning to go with that.  If you were to mess up after you

22   plead guilty in this case, the rules I am required to follow

23   change and I would have to place you in jail.

24           Do you understand that?

25           THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Okay.  So you won't see me again

2    because you're not -- you're not going to misbehave; right?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  We are in recess.

5          MS. PETERSON:  Thank you, Judge.

6              (Hearing adjourned at 10:47 a.m.)

7                    §        §        §

8    I certify that the foregoing is a correct transcript from the
     electronic sound recording of the proceedings in the
9    above-entitled matter.

10

         *Julie A. Pell, RPR, CRR, CRC*              8/7/18
11    _____        _____
          Signature of Transcriber                  Date
12        Julie A. Pell, RPR, CRR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25